1    ALEXANDER B. CVITAN (SBN 81746)
     E-mail: alc@rac-law.com
2    MARSHA M. HAMASAKI (SBN 102720)
     E-mail: marshah@rac-law.com
3    PETER A. HUTCHINSON (SBN 225399), and
     E-mail: peterh@rac-law.com
4    REICH, ADELL & CVITAN, A Professional Law Corporation
     3550 Wilshire Blvd., Suite 2000
5    Los Angeles, California 90010-2421
     Telephone: (213) 386-3860; Facsimile: (213) 386-5583
6    Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSTRUCTION LABORERS TRUST FUNDS FOR SOUTHERN CALIFORNIA ADMINISTRATIVE COMPANY, a Delaware limited liability company,<br><br>           Plaintiff,<br><br>     v.<br><br>MAX OUT INC. etc., et al.,<br><br>           Defendants. | CASE NO.: 2:19-cv-04021 FMO (KSx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT BY DEFAULT AGAINST DEFENDANTS MAX OUT INC. AND RODERICK DELTON EDISON, SR.**<br><br>[Fed.R.Civ.P. 55(b)(2)]<br><br>DATE:    August 29, 2019<br>TIME:     10:00 a.m.<br>JUDGE:  Fernando M. Olguin<br>CRTM:   6D, 6th Floor<br>PLACE: 350 W. 1st Street<br>               Los Angeles, CA 90012 |

///

///

365687v2

## TABLE OF CONTENTS

PAGE(S)

I.   **INTRODUCTION** ........................................................................... 1

II.  **FACTS ESTABLISHED BY DEFAULT** ....................................... 1

III. **CLAIMS FOR RELIEF** ................................................................ 10

    A.  **FIRST CLAIM FOR RELIEF**:  Under the Agreements and ERISA, the EMPLOYER Owes Unpaid Fringe Benefit Contributions and Related Damages ............................................................... 10

        1.   The EMPLOYER is Bound to the Agreements and Breached Them ............................................................. 10

        2.   Damages ........................................................................ 10

    B.  **SECOND CLAIM FOR RELIEF**:  The EMPLOYER and PRINCIPAL are Jointly and Severally Liable Under the Settlement Agreement for a Portion of the Amount Due .................................................... 11

    C.  **THIRD AND FOURTH CLAIMS FOR INJUNCTIVE RELIEF**: Injunctive Relief is Provided for by Law and Needed ............................ 13

        1.   Injunctive Relief is Expressly Authorized Under ERISA and the Public Policy Underlying ERISA .................................... 13

        2.   Issuance of an Order for the EMPLOYER to Comply with Its Obligation to Produce Records for Audit is Necessary for the Trust Funds to Determine Both if it Owes Additional Amounts and What Credits Toward Fringe Benefits to Provide its Employees .................................................. 15

i

3.    An Award of Injunctive Relief Ordering the EMPLOYER
      to Comply with its Obligation to Submit Timely Monthly
      Reports and Contributions to the Trust Funds is Necessary
      To Prevent Further Harm to the Trust Funds and its
      Participants ............................................................................ 17

D.    **Application of the Factors Set Forth in Eitel v. McCool Weighs
      In Favor of Entry of Judgment by Default** ......................... 18
      1.    Possibility of Prejudice to Plaintiff ................................. 18
      2.    The Merits of Plaintiff's Substantive Claim ................... 19
      3.    The Sufficiency of the Complaint .................................... 20
      4.    The Sum of Money at Stake .............................................. 20
      5.    The Possibility of a Dispute Regarding Material Facts ................. 21
      6.    Whether the Default Was Due to Excusable Neglect .................... 21
      7.    Strong Public Policy Favoring Decision on the Merits ................. 21

IV.   **SCOPE OF JUDGMENT** .............................................................. **22**

V.    **CONCLUSION** .......................................................................... **18**

351675v2

1

## **TABLE OF AUTHORITIES**

2

3

## **FEDERAL CASES**

4

PAGE(s)

5

*Amoco Prod. Co. v. Gambell*,

6

480 U.S. 531 (1987) ...................................................................15n.3

7

*Bay Area Roofers H&W Tr. Fund v. Westech Roofing*,

8

2014 WL 4383062 (N.D. Cal. 2014) .................................................15n.3

9

*Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.,*

10

472 U.S. 559, 105 S. Ct. 2833, 86 L. Ed. 2d 447 (1985) ..........14, 15, 15n.4, 16, 20

11

*Construction Laborers Trust Funds v. Play Smart Surfacing,*

12

2013 WL 6007594 (C.D. Cal. 2013) ............................................. 14-15

13

*Eitel v. McCool,*

14

782 F.2d 1470 (9th Cir. 1986) ..........................................................18

15

*Gould v. Lambert Excavating, Inc.,*

16

870 F.2d 1214 (7th Cir. 1989) .........................................................17

17

*Huge v. Long's Hauling Co., Inc.,*

18

590 F.2d 457 (3d Cir. 1978) ............................................................17

19

*Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine*

20

*Drywall Co., Inc.,*

21

239 F. Supp. 2d 26 (D.D.C. 2002) .....................................................17

22

*Laborers Fringe Ben. Funds-Detroit & Vicinity v. NW. Concrete & Const., Inc.,*

23

640 F.2d 1350 (6th Cir. 1981) ............................... 13, 13-14, 13n.2, 14, 17

24

*Op. Eng's Pens. Trust v. A-C Co.,*

25

859 F.2d 1336 (9th Cir. 1988) ..........................................................10

26

*Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp.,*

27

920 F.2d 1491 (9th Cir. 1990) ..........................................................16

28

iii

*Stormans v. Selecky,*
   586 F.3d 1109 (9th Cir. 2009) .................................................................... 14

*TeleVideo Sys., Inc. v. Heidenthal,*
   826 F.2d 915 (9th Cir. 1987) ................................................................. 1, 20

*Trailer Train v. State Bd. of Equalization,*
   697 F.2d 860 (9th Cir.1983) .................................................................... 14

*Winter v. Natural Res. Def. Council, Inc.,*
   555 U.S. 7, 129, S. Ct. 365 (2008) .......................................................... 14

351675v2

# FEDERAL STATUTES

26 U.S.C. § 4975(c)(1)................................................................15n.4

29 U.S.C. § 186.................................................................................2

29 U.S.C. § 1001.............................................................................13

29 U.S.C. § 1001(a).........................................................................13

29 U.S.C. § 1001(b).....................................................................13-14

29 U.S.C. § 1002(3)...........................................................................2

29 U.S.C. § 1002(37)(A)....................................................................2

29 U.S.C. § 1059(a)(l)......................................................................16

29 U.S.C. § 1106.........................................................................15n.4

29 U.S.C. § 1107(a)....................................................................15n.4

29 U.S.C. § 1132(a)(3)...............................................................14, 17

29 U.S.C. § 1132(g)(2)....................................................................10

29 U.S.C. § 1132(g)(2)(E).........................................................14, 17

29 U.S.C. § 1145.............................................................................17

# FEDERAL REGULATIONS

PROHIBITED TRANSACTION EXEMPTION 76-1, 41 F.R. 12740 (3/26/76) ......................15n.4

# RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 8............................................................................20

Fed. R. Civ. P. 54(d)(1) ................................................................11

Local Rule 55-3.........................................................................11,12

v

1

# LEGISLATIVE HISTORY

2

H.R.Rep.No. 93-533, 93d Cong., 2d Sess. 17, reprinted in (1974) U.S.CODE

CONG. & AD.NEWS, p. 4639 ...............................................................................13n.2

# I.  INTRODUCTION

The plaintiff ("ADMINCO") is a fiduciary agent for collection for certain employee benefit plans ("Trust Funds").  ADMINCO brought this action on behalf of the Trust Funds to: (a) recover, from the employer, unpaid monthly employee fringe benefit contributions and related damages due by it to the plans, through enforcement of the terms of the collective bargaining agreements and the plans (Claim 1); (b) recover, from the employer and its corporate officer, monetary damages for breach of a settlement agreement, consisting of a portion of the amounts also sought in Claim 1 (Claim 2); (c) compel the employer to produce records for an audit to determine if additional amounts are due (Claim 3); and (d) compel the employer to timely and fully report and pay its monthly fringe benefit contributions to the plans on behalf of its employees (Claim 4).  ADMINCO hereby moves for judgment by default.

# II.  FACTS ESTABLISHED BY DEFAULT

A default establishes as true the well-pleaded factual allegations of a complaint, except those related to the amount of damages.  *Televideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-918 (9th Cir. 1987) (*TeleVideo Systems*).  Thus, by the uncontroverted allegations of its complaint, ADMINCO has established the following facts relevant to this motion:[1]

A.    [Plaintiff ("ADMINCO"); Trust Funds]  ADMINCO is an administrator of, agent for collection for, a fiduciary to, and brings this action on behalf of the

---

[1] Cites to the concurrently filed declarations of Yvonne Higa (ADMINCO's Collections Supervisor) and Peter A. Hutchinson (the undersigned attorney) are added for the determination of damages due and additional support for contractual requirements and other facts.

1

365687v2

employee benefit plans listed in its complaint (collectively "Trust Funds").  Each of the Trust Funds is an express trust created by written agreement, an employee benefit plan within the meaning of section 3(3) of ERISA (29 U.S.C. § 1002(3)), and a multi-employer plan within the meaning of section 3(37)(A) of ERISA (29 U.S.C. § 1002(37)(A)).  Each of the Trust Funds exists pursuant to ERISA and section 302 of the LMRA (29 U.S.C. § 186).  ADMINCO and the Trust Funds' principal places of business are in the County of Los Angeles, State of California.  [Complaint at ¶ 2.]

B.     [Defendant Max Out Inc. ("EMPLOYER")]  Defendant Max Out Inc. (referred to herein as "EMPLOYER"): is a corporation organized and existing under the laws of the State of Nevada; has a principal place of business in the City of Baldwin Park, County of Los Angeles, State of California; and does, or at all relevant times did, business in the State of California as a construction contractor in an industry affecting interstate commerce.  [Complaint at ¶ 3.]

C.     [Defendant Roderick Delton Edison, Sr. ("PRINCIPAL")]  Defendant Roderick Delton Edison, Sr. (referred to herein as "PRINCIPAL"): is an individual who resides in the County of Los Angeles, State of California; is the President or other officer or managing agent of the EMPLOYER; and has been such an officer or managing agent at all times since at least December 1, 2014.  [Complaint at ¶ 4.]

D.     [The EMPLOYER is Bound to Collective Bargaining and Trust Agreements ("Agreements")]  The EMPLOYER is, and at all relevant times was (including from at least since December 8, 2015), bound to certain collective bargaining agreements of the Southern California District Council of Laborers and its affiliated local Unions (collectively "Laborers Union") known as the "Construction Master Labor Agreements," and alternatively known as the "Southern California Master Labor Agreements," including ones known as the *Southern California Master*

2

*Labor Agreement*, the *Registered Project Agreement for Light Commercial Construction* and the *General Construction Worker Classification Agreement for Private Work*.  Prior to December 8, 2015, including from at least December 1, 2014, the EMPLOYER was bound to the terms of the Construction Master Labor Agreements for certain work, including but not necessarily limited to work on a project or projects of the Exposition Metro Line Construction Authority.  Pursuant to the Construction Master Labor Agreements, the EMPLOYER became bound to the terms and conditions of the various trust agreements that created each of the Trust Funds ("Trust Agreements").  When referenced collectively hereinafter, the Construction Master Labor Agreements and Trust Agreements are referred to as "the Agreements."  [Complaint at ¶¶ 5-6.]

   E.  [The EMPLOYER is Required to Submit Fringe Benefit Reports and Contributions to the Trust Funds; Covered Work]  Under the terms of the Agreements, employers, including the EMPLOYER, are required to submit monthly fringe benefit contributions ("Monthly Contributions") to the Trust Funds for all hours worked by (or paid for) their employees who perform work covered by the Agreements ("Covered Work").  Under the terms of the Agreements, employers, including the EMPLOYER, are required to submit to the Trust Funds, with their Monthly Contributions, monthly reports, itemized by project, listing the names of their employees who performed Covered Work, their Social Security numbers, the hours of work performed by (or paid for) each, and the resulting Monthly Contributions due for them ("Monthly Reports").  The Trust Funds rely on Monthly Reports – and the accuracy of those reports – to determine the amount of Monthly Contributions due to the Trust Funds by employers and the credit toward fringe benefits to be allocated to their employees.  [Complaint at ¶¶ 7-8; *See also* Higa Decl. at ¶¶ 6, 8.]

///

365687v2

3

F.      [The Agreements Require Payment of Interest and Liquidated Damages on Delinquent Monthly Contributions]  The Agreements provide for the payment of interest on delinquent Monthly Contributions from the date due at a rate set by the trustees of the Trust Funds.  The trustees have set that rate at five percent (5%) above the prime rate set by the Federal Reserve Board of San Francisco, California.  The Agreements also provide for the payment of liquidated damages for each month of delinquent Monthly Contributions or Monthly Reports, for each Trust Fund separately, in the amount of twenty percent (20%) of the delinquent Monthly Contributions due to the Trust Fund or $25, whichever is greater (except with respect to the Laborers Contract Administration Trust Fund for Southern California, which assesses liquidated damages at the greater of $20 or ten percent (10%)).  In addition, employers are required to pay fees for the submission of checks not honored by the banks upon which they are drawn.  [Complaint at ¶ 9.  *See also* Higa Decl. at ¶ 14.]

G.      [Employer Delinquencies Cause Harm to the Trust Funds; Liquidated Damages Provision]  The failure of employers to pay Monthly Contributions when due causes damages to the Trust Funds and its participants beyond the value of the unpaid Monthly Contributions, which are difficult to quantify.  Apart from the fees and costs incurred in litigation, the harm caused includes, but is not limited to, the administrative costs of processing and collecting delinquencies, the costs of adjusting benefit credits and notifying participants, the additional burden placed on contractors who faithfully pay their contributions, and the burden upon participants and beneficiaries who may be unable to qualify for benefits they may have otherwise been entitled to had it not been for the delinquency of their employer.  The liquidated damages provision of the Agreements was meant to compensate for the loss to the Trust Funds, which is incurred even if the Monthly Contributions for a given month are later paid.  It is based on the Trust Funds' ratio of collection costs over amounts collected, which are regularly reported to the Trust Funds' trustees.  [Complaint at

4

¶ 10.  *See also* <u>Higa Decl.</u> at ¶¶ 23 (collection procedures), 24 (harm caused by delinquencies), 25 (cost of collection ratio; liquidated damages).]

H.    [<u>Subcontracting to Non-Signatory Entities; Damages</u>]  Under the terms of the Agreements, employers, including the EMPLOYER, agree to subcontract Covered Work only to entities that are signatory to a Construction Master Labor Agreement applicable to the work performed.  If an employer subcontracts Covered Work to a non-signatory entity, the employer becomes liable to the Trust Funds in an amount equal to the Monthly Contribution s that would have been due if the entity had been signatory (plus interest, liquidated damages and audit fees thereon). [<u>Complaint</u> at ¶ 11.  *See also* <u>Higa Decl.</u> at ¶ 9.]

I.    [<u>Subcontracting to Delinquent Employers; Liability</u>]  Under the terms of the Agreements, employers, including the EMPLOYER, agree not to subcontract Covered Work to entities that are delinquent to the Trust Funds.  If an employer subcontracts Covered Work to such an entity the employer becomes under the terms of the Agreements liable to the Trust Funds for the Monthly Contributions due by the subcontractor and any lower-tier subcontractors.  [<u>Complaint</u> at ¶ 12.  *See also* <u>Higa Decl.</u> at ¶ 10.]

J.    [<u>Auditing</u>]  The Agreements provide the Trust Funds with specific authority to examine the payroll and business records of employers, including the EMPLOYER, to determine whether they have reported all hours worked by (or paid for) their employees who perform Covered Work, and whether they have paid the appropriate Monthly Contributions and other amounts due by them to the Trust Funds.  The Agreements further provide that employers, including the EMPLOYER, must maintain records sufficient for the Trust Funds to verify proper Monthly Reporting, and, where there has been inaccurate Monthly Reporting, to determine the

5

365687v2

additional amounts due, and provide that the employer must pay the Trust Funds' audit fees if it is delinquent to the Trust Funds.  The Trust Funds have delegated the authority to perform such audits to ADMINCO.   [Complaint at ¶ 13.  *See also* Higa Decl. at ¶¶ 12, 13.]

K.     [The EMPLOYER is Required to Pay Attorneys' Fees and Costs Under the Terms of the Agreements]  The Agreements require employers to pay the Trust Funds' attorneys' fees and costs of litigation to enforce the Agreements' foregoing terms, including the Monthly Contribution, Monthly Reporting, subcontracting and audit provisions  [Complaint at ¶¶ 14, 19, 28, 33.  *See also* Higa Decl. at ¶ 15.]

L.     [Tolling Agreement]  Effective September 5, 2018, the parties to this lawsuit entered into an agreement tolling the applicable statute of limitations for the Trust Funds (including ADMINCO on their behalf) to file suit against the EMPLOYER and PRINCIPLAL to collect the monetary damages sought in the second claim for relief in this complaint, which are among the amounts sought in the first claim for relief.  [Complaint at ¶ 15.  *See also* Higa Decl. at ¶ 21.H. and Attach. N (settlement and tolling agreement), at ¶ 5.D (p.3) .]

M.     [Delinquency]  The EMPLOYER has failed to submit Monthly Contributions due by it to the Trust Funds and owes Monthly Contributions and related damages to the Trust Funds.  [Complaint at ¶ 17.  *See also* Higa Decl. at ¶¶ 20, 21.B-G.]

N.     [Settlement Agreement; Payment Plan]  The Trust Funds (through ADMINCO) and both the EMPLOYER and PRINCIPAL entered into a conditional settlement ("Settlement Agreement") with respect to the EMPLOYER's then-known delinquency to the Trust Funds ("Then-Known Delinquency").  In and by the terms of

365687v2

the Settlement Agreement, the Trust Funds agreed to waive a portion of the
EMPLOYER's Then-Known Delinquency upon, and conditioned upon, full
performance of the terms of the Settlement Agreement by the EMPLOYER and
PRINCIPAL, including but not limited to payment of a portion of the Then-Known
Delinquency in monthly installments ("Payment Plan") and the EMPLOYER's
compliance with the terms of the Agreements – including but not limited to the
Monthly Reporting, Monthly Contribution, subcontracting and audit provisions –
during a period extending through the term of the Payment Plan to the date of a
"Compliance Audit" to be performed by ADMINCO following successful remittance
of the Payment Plan installments.  [Complaint at ¶ 21.  *See also* Higa Decl. at ¶ 2.H
and Attch. N (Settlement Agreement), at ¶¶ 4 (p.2) (Then-Known Delinquency), 5.B
(p.2) (conditional waiver of portion of Then-Known Delinquency), 5.C (pp.2-3) (strict
compliance with conditions for waiver), 5.F (p.4) (compliance with obligations to
Trust Funds as condition), 5.H (pp.5-6) (compliance audit).]

        O.      [Joint Liability of EMPLOYER and PRINCIPAL Under Settlement
Agreement]  In, and by execution of, the Settlement Agreement, the PRINCIPAL
assumed personal liability under its terms, jointly and severally with the EMPLOYER,
for amounts due under the Settlement Agreement, including but not limited to the
amounts that would come due upon breach of the Settlement Agreement.  [Complaint
at ¶ 22.  *See also* Higa Decl. at ¶ 21.H and Attch. N (Settlement Agreement), at ¶ 5.A
(p.2).]

        P.      [EMPLOYER and PRINCIPAL Breached Settlement Agreement]  The
EMPLOYER and PRINCIPAL breached the Settlement Agreement in at least the
following ways: (a) failing to submit, and to timely submit, Payment Plan
installments; (b) failing to submit, and to timely submit, Monthly Reports and
Monthly Contributions due by the EMPLOYER to the Trust Funds; and (c) failing to

7

365687v2

comply with the EMPLOYER's obligation to itemize work by project in its Monthly Reports.  [Complaint at ¶ 23.  *See also* Higa Decl. at ¶¶ 21-22.G (unabated failure to comply with obligations to submit Monthly Reports and Contributions), 21.H (failure to submit payment plan installments).]

Q.     [Damages Due for Breach of Settlement Agreement]  As a result of the breach of the Settlement Agreement by the EMPLOYER and PRINCIPAL: (a) the conditions in the Settlement Agreement for waiver of a portion the Then-Known Delinquency were not met; (b) under the terms of the Settlement Agreement, the full amount of the Then-Known Delinquency became, and remains,  immediately due and owing jointly and severally by the EMPLOYER and PRINCIPAL to the Trust Funds, minus any Payment Plan installments made plus interest at the Trust Funds' plan rate; and (c) the Settlement Agreement, by its terms, does not bar collection of any unsatisfied amounts of that delinquency by any lawful means.  Any and all conditions to the obligations of the EMPLOYER and PRINCIPAL under the Settlement Agreement to pay this amount have been met.  Under the terms of the Settlement Agreement, ADMINCO is entitled to an award of its attorneys' fees and costs. [Complaint at ¶¶ 24-25.  *See also* Higa Decl. at ¶ 21.H and Attchs. N (Settlement Agreement) at ¶ 5.I (p.6) (damages upon breach), ¶ 5.P (p.7) (attorneys' fees and costs); O (amortization of amount now due as a result of breach).]

R.     [EMPLOYER is Chronic Delinquent]  The EMPLOYER has repeatedly failed to timely submit Monthly Reports and Monthly Contributions.  [Complaint at ¶ 30.  *See also* Higa Decl. at ¶¶ 20, 21B.-G.]

S.     [Damages]  By reason of the EMPLOYER's failure to comply with its Monthly Reporting and Contribution obligations, the Trust Funds, its participants and/or its beneficiaries have suffered and will continue to suffer hardship and actual

365687v2

and impending irreparable injury and damage for at least the following reasons.  First, the Trust Funds must provide credit each month to participants and beneficiaries, including the EMPLOYER's employees, toward eligibility for fringe benefits (such as health insurance and pensions) based on the number of hours they worked, which is determined from Monthly Reports.  Second, the amount of benefits payable to all participants and beneficiaries for health insurance and pension claims, including those employed by the EMPLOYER, is actuarially determined on the basis of funds projected to be received from contributing employers (including the EMPLOYER). Third, health insurance is not provided to participants and beneficiaries, including the EMPLOYER's employees, after a certain period of non-payment of Monthly Contributions on their behalf.  Fourth, vacation pay, which is distributed by the Construction Laborers Vacation Trust for Southern California (one of the Trust Funds), is not paid to employees, including the EMPLOYER's employees, for hours of work for which their employer has not submitted Monthly Contributions.  Fifth, the Trust Funds have a legal obligation to take steps to collect amounts due by delinquent employers and thus the EMPLOYER's ongoing delinquency results in an ongoing drain on Trust Funds resources.  Sixth, the Trust Funds lose investment income on late-paid and unpaid Monthly Contributions.  [Complaint at ¶ 31. *See also* Higa Decl. at ¶¶ 23, 24.]

///
///
///
///
///
///
///
///
///

# III. RELIEF SOUGHT

A. **FIRST CLAIM FOR RELIEF**:  Under the Agreements and ERISA, the EMPLOYER Owes Unpaid Fringe Benefit Contributions and Related Damages.

    1.  <u>The EMPLOYER is Bound to the Agreements and Breached Them</u>

It is established by the EMPLOYER's default that it was at all relevant times bound to the Agreements, including specifically since at least December 8, 2015.  [*See supra* § II.D. *See also* <u>Higa Decl.</u> at ¶ 19.]  It is also established that the EMPLOYER has failed to comply with its Monthly Reporting and Contribution obligations to the Trust Funds under the terms of the Agreements.  [*See supra* §§ II.E (obligations), II.M (failure to comply), II.R (same).  *See also* <u>Higa Decl.</u> at ¶¶ 20-21.B-G.]

    2.  <u>Damages</u>

The Trust Funds are entitled under the Agreements to an award of interest and liquidated damages on late-paid and unpaid Monthly Contributions, as well as attorneys' fees and costs.  [*See supra* §§ II.F (interest and liquidated damages), II.K (attorneys' fees and costs).]  ERISA mandates an award of these amounts.  29 U.S.C. § 1132(g)(2); <u>*Op. Eng's Pens. Trust v. A-C Co.*</u>, 859 F.2d 1336, 1342-43 (9th Cir. 1988).  The damages known to be due by the EMPLOYER to the Trust Funds are explained and itemized in the declaration of Yvonne Higa filed in support of this motion.  [*See* <u>Higa Decl.</u> at ¶¶ 20-21.B-G.]

Other than attorneys' fees and costs, the amount due by the EMPLOYER is $29,303.82, consisting of: $10,212.37 in unpaid Monthly Contributions; $2,122.25 in interest (through July 23, 2019); $16,089.20 in liquidated damages; and $880.00 in

10

audit fees.  [Id. at ¶ 21.B and Attch. J.]  The amount due is derived from the EMPLOYER's own Monthly Reports and other records, including certified payroll records and other records reviewed by ADMINCO during the course of audits of the EMPLOYER, which revealed undisclosed hours of Covered Work.  [Id. at ¶¶ 21.C-21.G.]  Pursuant to Local Rule 55-3, attorneys' fees are due in the amount of $2,358.23 ($1,200.00 plus 6% of $19,303.82).  ADMINCO is also entitled to costs under Federal Rule 54(d)(1).  It incurred a $400.00 fee for filing its complaint and $65.96 in costs for service of the complaint on the EMPLOYER.  [Hutchinson Decl. at ¶ 6.]  Based on the foregoing, ADMINCO seeks entry of a monetary judgment on its first claim for relief against the EMPLOYER in the amount of $32,128.01 (consisting of a principal amount of $29,303.82, attorneys' fees of $2,358.23 and costs of $465.96).

B.  **SECOND CLAIM FOR RELIEF**:  The EMPLOYER and PRINCIPAL are Jointly and Severally Liable Under the Settlement Agreement for a Portion of the Amount Due.

It is established that the EMPLOYER and PRINCIPAL entered into the Settlement Agreement to pay a portion of the EMPLOYER's delinquency ("Then-Known Delinquency").  [*See supra* § II.N.  *See also* Higa Decl. at ¶ 21.H. and Attch. N (Settlement Agreement).]  The monetary amount due on the Settlement Agreement, and sought by ADMINCO in its second claim for relief, represents a portion of the amount sought in ADMINCO's first claim for relief.  [Higa Decl. at ¶ 21.H.]  The EMPLOYER and PRINCIPAL breached the Settlement Agreement. [*See supra* § II.P. *See also* Higa Decl. at ¶ 21.H. (failure to comply with terms of Settlement Agreement) and Attch. N (Settlement Agreement), at ¶¶ 5.B (p.2) (conditions for waiver), 5.C (pp.2-3) (strict compliance with conditions for waiver required), 5.E.1 (p.3) (payment plan requirements), 5.F (p.4) (compliance with obligations to Trust Funds as

condition).]  As a result of the breach of the Settlement Agreement by the EMPLOYER and PRINCIPAL, the full amount of the Then-Known Delinquency became, and remains, immediately due and owing jointly and severally by the EMPLOYER and PRINCIPAL to the Trust Funds, minus any Payment Plan installments made plus interest at the Trust Funds' plan rate.  [*See supra* § II.Q.  *See also* <u>Higa Decl.</u> at ¶ 21.H. and Attch. N (Settlement Agreement), at ¶ 5.I (p.6) (damages due upon default).]  The EMPLOYER and PRINCIPAL are jointly and severally liable for that amount.  [*See supra* § II.O.  *See also* <u>Higa Decl.</u> at ¶ 21.H. and Attch. N (Settlement Agreement), at ¶ 5.A (p.2)]  The amount due under the terms of the Settlement Agreement is now $21,149.98, accounting for interest and credit for payments received.  [<u>Higa Decl.</u> at ¶ 21.H and Attch. O (amortization of amount due).]  That monetary amount is a portion of, and encompassed by, the total delinquency sought in ADMINCO's first claim for relief.  [<u>Higa Decl.</u> at ¶ 21.H.] Any and all conditions to the EMPLOYER and PRINCIPAL's obligations under the Settlement Agreement to pay this amount have been met. [*See supra* § II.Q.]

Under the terms of the Settlement Agreement, ADMINCO is entitled to an award of attorneys' fees and costs.  [*See supra* § II.Q.  *See also* <u>Higa Decl.</u> at ¶ 21.H and Attch. N (Settlement Agreement), at ¶ 5.P (p.7).]  Pursuant to Local Rule 55-3, the Trust Funds are entitled to an award of attorneys' fees in the amount of $1,869.00 ($1,200.00 plus 6% of $11,149.98).  ADMINCO is also entitled to costs in the amount of $529.46, consisting of the fee for filing the complaint ($400.00) and the fees for its service on the EMPLOYER ($65.96) and PRINCIPAL ($63.50).  [<u>Hutchinson Decl.</u> at ¶ 6.]  Thus ADMINCO seeks entry of a monetary judgment on its second claim for relief on its second claim for relief jointly and severally against the EMPLOYER and PRINCIPAL in the amount of $23,548.44 (consisting of a principal amount of $21,149.98, attorneys' fees of $1,869.00 and costs $529.46).

///

365687v2

C.    **THIRD AND FOURTH CLAIMS FOR INJUNCTIVE RELIEF:**

Injunctive Relief is Provided for by Law and Needed.

1.    Injunctive Relief is Expressly Authorized Under ERISA and the Public Policy Underlying ERISA

ERISA was enacted in order to "stabilize the rights and liabilities involved in benefit plans established under collective bargaining agreements." *Laborers Fringe Ben. Funds-Detroit & Vicinity v. NW. Concrete & Const., Inc.*, 640 F.2d 1350, 1352 (6th Cir. 1981) (*Northwest Concrete*) (citing ERISA section setting forth "Congressional findings of fact and declaration of policy," 29 U.S.C. § 1001). As found by Congress, and expressly stated in ERISA, "the continued well-being and security of millions of employees and their dependents are directly affected by these plans; . . . they are affected with a national public interest, and they have become an important factor affecting the stability of employment." *Id.* at 1352 n.1 (quoting 29 U.S.C. § 1001(a)). Accordingly, it is further expressly stated in ERISA that:

> It is hereby declared to be the policy of this chapter to protect . . . the interests of participants in employee benefit plans and their beneficiaries, by . . . establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.[2]

---

[2] ERISA legislative history "states that '(t)he intent of the Committee is to provide the full range of legal and equitable remedies available in both state and federal courts and to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities under state law for recovery of benefits due to participants.'" *Northwest Concrete*, 640 F.2d at 1352 (quoting H.R.Rep.No.93-533,93d Cong., 2d Sess.17, reprinted in (1974) U.S.Code Cong. & Ad.News, p. 4639, 4655 ("H.R.Rep.No.93-533")).

13

365687v2

29 U.S.C. § 1001(b).  *See also Northwest Concrete*, 640 F.2d at 1352, 1352 n.2 (quoting § 1001(b)).

As expressly recognized by the Supreme Court, "[b]oth the concern for fully informing participants of their rights and status under a plan and the concern for assuring the financial integrity of the plans by determining the class of potential benefit claimants and holding employers to the full and prompt fulfillment of their contribution obligations are proper and weighty within the framework of ERISA." *Cent. States, SE & SW Areas Pension Fund v. Cent. Transp.*, 472 U.S. 559, 574, 105 S. Ct. 2833, 2842 (1985) (*Central States*).  "To effectuate [its stated policy], Congress promulgated enforcement provisions" as part of ERISA.  *Northwest Concrete*, 640 F.2d at 1352.  The ERISA enforcement provisions expressly provide for injunctive relief.  *See* 29 U.S.C. §§ 1132(a)(3) (authorizing courts to "enjoin any act or practice" or "obtain other appropriate equitable relief" to enforce the provisions of ERISA or the terms of the plan); 1132(g)(2)(E) (in an action brought to collect unpaid fringe benefit contributions "the court shall award the plan" not only the unpaid contributions and related monetary damages, but also "such other legal or equitable relief as the court deems appropriate").

Generally, a party seeking injunctive relief must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Stormans v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 374 (2008)).  However, the Ninth Circuit has held that these requirements "need not be satisfied when an injunction is sought to prevent the violation of a federal statute which specifically provides for injunctive relief."  *Trailer Train v. State Bd. of Equalization*, 697 F.2d 860, 869 (9th Cir.1983) (*Trailer Train*).  *See also Construction Laborers Trust Funds v. Play Smart Surfacing*, 2013 WL 6007594, at *6 (C.D. Cal.

14

2013) (*Play Smart*) (citing *Trailer Train* in issuing injunctive relief ordering employer to comply with its obligations to produce records for audit and submit timely monthly fringe benefit reports and contributions).[3]

> 2. Issuance of an Order for the EMPLOYER to Comply with Its Obligation to Produce Records for Audit is Necessary for the Trust Funds to Determine Both if it Owes Additional Amounts and What Credits Toward Fringe Benefits to Provide its Employees

The Agreements expressly require employers, including the EMPLOYER, to produce their records for audit.  [*See supra* § II.J.  *See also* Higa Decl. at ¶¶ 12, 13.]  The Trust Funds are entitled to enforcement of that provision.  *Central States*, 472 U.S. at 578-579, 105 S. Ct. at 2844.  As recognized by the Supreme Court, "ERISA clearly assumes that trustees will act to ensure that a plan receives all funds to which it is entitled, so that those funds can be used on behalf of participants and beneficiaries, and that trustees will take steps to identify all participants and beneficiaries, so that the trustees can make them aware of their status and rights under the trust's terms."[4]  *Id.*,

---

[3] The injunctive relief issued in *Trailer Train* was preliminary, whereas the injunctive relief sought in the present case would be permanent.  However, the Supreme Court has rejected the distinction between the two as significant in evaluating whether injunctive relief should be granted.  *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 546 n.12 (1987) (*Amoco*).  *See also Bay Area Roofers H&W Tr. Fund v. Westech Roofing*, 2014 WL 4383062, at *4 n.4 (N.D. Cal. 2014) (*Bay Area Roofers*) (issuing permanent injunction ordering employer to comply with obligation to submit timely monthly reports and contributions) (quoting *Amoco*).

[4] In fact, employee benefit plans "which do not establish and implement collection procedures which are reasonable, diligent and systematic may be found to be engaging in prohibited transactions under sections 406 and 407(a) [of ERISA (29 U.S.C. §§ 1106 and 1107(a))] and section 4975(c)(1) of the [Internal Revenue] Code [(26 U.S.C. § 4975(c)(1))] in failing to collect delinquent contributions."  PROHIBITED TRANSACTION EXEMPTION 76-1, 41 F.R. 12740, 12741 (3/26/76). *See also Central States*, 472 U.S. at 574, 105 S. Ct. at 2842 (citing Prohibited Transaction Exemption 76-1 as support for employee benefit plan audit rights).  "For a plan passively to allow an employer to create such unfunded liabilities would jeopardize the participants' and beneficiaries' interests as well as those of all participating

365687v2

472 U.S. at 571-72, 105 S. Ct. at 2841.  The EMPLOYER has a duty under both ERISA and the Agreements to maintain records sufficient for the Trust Funds to make such determinations.  [*See* 29 U.S.C. § 1059(a)(1) (duty under ERISA); *Supra* § II.J (duty under Agreements).]

The right to audit recognized by the Supreme Court does not depend on the existence of a known claim for delinquent contributions or benefits.  *Central States*, 472 U.S. at 579-81, 105 S. Ct. at 2844-45.  *See also Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp.*, 920 F.2d 1491, 1495 (9th Cir. 1990) (reversing district court refusal to compel audit and finding a system of random audits authorized and enforceable under agreements) (citing *Central States*).  Thus the EMPLOYER's Monthly Reporting and Contribution history is not a prerequisite to the Trust Funds' enforcement of its obligation to produce its records for audit.

Citing the Codification of Statements on Auditing Standards, the Supreme Court has deferred to the judgment of employee benefit plan trustees in determining the scope of, and documents needed for, an audit.  *Central States*, 472 U.S. at 567-68, 105 S. Ct. at 2839.  The documents sought by ADMINCO to complete its audit are listed on pages 15 through 17 of its complaint and paragraph 13 of the declaration of Yvonne Higa submitted in support of this motion.  That list is designed to lead to the discovery of the amounts due by the EMPLOYER to the Trust Funds.

///

///

///

///

///

///

employers who properly comply with their obligations."  *Central States*, 472 U.S. at 580, 105 S. Ct. at 2845 (citation omitted).

365687v2

3.  <u>An Award of Injunctive Relief Ordering the EMPLOYER to Comply with its Obligation to Submit Timely Monthly Reports and Contributions to the Trusts Funds is Necessary to Prevent Further Harm to the Trust Funds and its Participants</u>

Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), authorizes courts to "enjoin any act or practice" or "obtain other appropriate equitable relief" to enforce the provisions of ERISA or the terms of the plan.  "[S]ection 502(a)(3) is unambiguous evidence of Congress' express intent to permit federal courts to issue injunctions." <u>Northwest Concrete</u>, 640 F.2d at 1352.  In <u>Northwest Concrete</u>, the Sixth Circuit reversed a district court's decision not to grant a final injunction against failing to pay future contributions.  <u>Id.</u> at 1353.  <u>See also</u> <u>Huge v. Long's Hauling Co., Inc.</u>, 590 F.2d 457 (3d Cir. 1978).  Additional support for such injunctive relief is found with the enactment of the Multi-Employer Pension Plan Amendments of 1980 (MEPPA), Pub.L. 96-364, 94 Stat. 1295 (Sept. 26, 1980), which added ERISA § 502(g)(2)(E) establishing that "the court <u>*shall*</u> award the plan -- . . . (E) such other legal or equitable relief as the court deems appropriate" for a violation of ERISA § 515 (29 U.S.C. § 1145), which requires the submission of fringe benefit contributions where required by a collective bargaining agreement, as here.  29 U.S.C. § 1132(g)(2)(E) (emphasis added).  In <u>Gould v. Lambert Excavating, Inc.</u>, 870 F.2d 1214, 1217 (7th Cir. 1989), the Court found that "ERISA provides for civil enforcement, including an injunction, of an employer's obligations to make contributions to pension plans."  <u>*See also*</u> <u>Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co., Inc.</u>, 239 F. Supp. 2d 26, 33 (D.D.C. 2002).

Here, it is established that EMPLOYER has been repeatedly delinquent in submission of Monthly Reports and Contributions.[5]  [*See supra* § II.R. *See also* Higa

_____

[5] Monthly Reports and Contributions are due on the fifteenth day of each month for the

17

Decl. at ¶¶ 21.B-H.]  The Trust Funds have suffered and will continue to suffer extreme hardship and actual and impending irreparable injury and damage as a result of the EMPLOYER's ongoing failure to submit timely Monthly Reports fully disclosing its Covered Work and corresponding payment of the Monthly Contributions due.  [*See supra* §§ II.G, II.S.  *See also* <u>Higa Decl.</u> at ¶¶ 23-24.]

    D.    <u>Application of the Factors Set Forth in Eitel v. McCool Weighs in Favor of Entry of Judgment by Default</u>.

"Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." <u>*Eitel v. McCool*</u>, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (*Eitel*).

    1.  <u>Possibility of Prejudice to Plaintiff</u>

As explained in ADMINCO's complaint, the Trust Funds are multiemployer employee benefit plans.  [*Supra* § II.A; *See also* <u>Higa Decl.</u> at ¶ 5.]  They provide health insurance, pensions and other employee benefits to the employees of employers that are bound to the Agreements.  [<u>Higa Decl.</u> at ¶ 5.]  It is established by the EMPLOYER's default – and documented in this motion – that the EMPLOYER has been, and continues to be, delinquent in its obligations to the Trust Funds under the terms of the Agreements.  [*See supra* §§ II.M (currently delinquent), II.R (repeatedly delinquent); <u>Higa Decl.</u> at ¶¶ 20 (chronic failure to timely submit Monthly Reports

previous month. [<u>Higa Decl.</u> at ¶ 6.]

365687v2

and Contributions, failure to disclose hours of Covered Work on Monthly Reports), 21.B-H (itemization and documentation of known current delinquency).]  The failure of an employer to comply with its obligations to the Trust Funds leaves the Trust Funds less than fully funded.  [*See supra* § II.S; <u>Higa Decl.</u> at ¶¶ 24.A, 24.C.]  The Trust Funds also lose the use of the unpaid funds.  [*See supra* § II.S.  <u>Higa Decl.</u> at ¶ 24.A.]  In addition, they are forced to expend resources to investigate the full extent of, and collect, the amount due, and are left unable to provide certain credits to the employer's employees toward fringe benefits.  [*See supra* §§ II.G, II.S.  *See also* <u>Higa Decl.</u> at ¶¶ 23, 24.]  Thus not only the Trust Funds, but also their participants, are harmed.  Employer delinquencies can result in the denial of benefits to participants, including the loss of health insurance and pension rights.  [*See supra* §§ II.G, II.S. *See also* <u>Higa Decl.</u> at ¶¶ 23 (Trust Funds unable to provide credits to employees toward qualification for benefits if employer fails to submit Monthly Reports disclosing work performed or fully disclose work performed on Monthly Reports), 24.E (employer delinquencies complicate actuarial determinations of benefits resulting in reduction of benefits to all employees), 24.G (health insurance not provided after period of non-payment of Monthly Contributions).]  For these reasons, the failure to enter the judgment sought would prejudice the Trust Funds.

2.  <u>The Merits of Plaintiff's Substantive Claim</u>

ADMINCO's claims for relief are for monetary damages and injunctive relief compelling the EMPLOYER's compliance with its obligations to produce records for audit and to submit Monthly Reports and Contributions to the Trust Funds.  The merits of these claims for relief are discussed in Sections III.A through III.C of this memorandum.

///

///

365687v2

### 3.  The Sufficiency of the Complaint

Rule 8 of the Federal Rules of Civil Procedure requires short and plain statements of jurisdiction and claim(s) for relief, as well as a demand for relief sought. ADMINCO's complaint meets the requirements of Rule 8.  The basis of the Court's jurisdiction is set forth at paragraph 1 of the complaint.  Relevant facts are thereafter alleged and claims for relief stated.  A demand for the relief sought is set forth in the claims for relief and the prayer for relief.  A default establishes as true the well-pleaded factual allegations of a complaint, except those related to the amount of damages. _TeleVideo Systems_, 826 F.2d at 917-918.  Specific factual allegations of the complaint supporting ADMINCO's motion for default judgment are set forth in Section II of this memorandum.

### 4.  The Sum of Money at Stake

As recognized by the Supreme Court, "[ERISA] . . . requires that a benefit plan prevent participant employers from gaining even temporary use of assets to which the plan is entitled, . . . a requirement that would certainly create a trustee responsibility for assuring full and prompt collection of contributions owed to the plan." _Cent. States, SE & SW Areas Pension Fund v. Cent. Transp._, 472 U.S. 559, 572-573, 105 S. Ct. 2833, 2841 (1985).  Even if the amount sought were considered large, ADMINCO submits that it is appropriate and reasonable to enter judgment for it, particularly given the purpose and dictates of ERISA. Entry of judgment against delinquent contractors, including the EMPLOYER, in the amount they owe is necessary to assure the solvency of Trust Funds and protect their interests and those of their participants.

///

///

///

365687v2

5.   The Possibility of a Dispute Regarding Material Facts

The Monthly Contribution, Monthly Reporting and audit obligations of the Agreement are established by default and further documented by the declaration of Yvonne Higa filed in support of this motion.  The monetary damages sought are based on the EMPLOYER's own records and the terms of a written settlement agreement. [Higa Decl. at ¶¶ 19 and Attchs. I (EMPLOYER agreement binding it to Agreements), 20-21.B-G and Attchs. referenced therein (itemizing amount due on ADMINCO's first claim for relief), 21.H and Attchs. N (Settlement Agreement), O (itemizing amount due on ADMINCO's second claim for relief).]  It has been established by default and declaration that the EMPLOYER owes the amounts sought, and that the PRINCIPAL is jointly and severally liable for a portion of them pursuant to a breach of the Settlement Agreement.

6.   Whether the Default Was Due to Excusable Neglect

The EMPLOYER and PRINCIPAL were served with the complaint.  [*See* Court Documents 9 (proof of service on EMPLOYER), 10 (proof of service on PRINCIPAL).]  The EMPLOYER and PRINCIPAL also received notice of this motion for default judgment, as documented by the proofs of service attached to the documents submitted as, and in support of, this motion (even though they have not made appearances in this action and thus are not entitled to such notice).  There is no evidence of excusable neglect.

7.   Strong Public Policy Favoring Decision on the Merits

The strong public policy favoring decisions on the merits is not, and should not be, insurmountable.  Here, there is also a strong public policy in favor of access to the

21

courts for employee benefit plans, such as the Trust Funds, as discussed in Section III.C of this memorandum.  Judgment enforcement is an important tool to collect amounts due to the Trust Funds and prevent future damage by delinquent employers, as well as to determine credit toward benefits to which employee participants are entitled based on their work or subsequent collection of amounts due for their work.  [*See* Higa Decl. at ¶¶ 23, 24.]

## IV.  **SCOPE OF JUDGMENT**

The monthly obligation of an employer to contribute to the Trust Funds is an ongoing one.  Accordingly, the investigation and collection of employer delinquencies is also ongoing.  Consistent with its fiduciary obligations, ADMINCO routinely audits employers in order to verify proper reporting and determine if additional undisclosed amounts are due.  [Higa Decl. at ¶ 12.]  ADMINCO also routinely reserves its rights with respect to any undisclosed amounts due for unaudited periods in order to make clear that it does not waive the Trust Funds' right to determine and collect Monthly Contributions due, but not disclosed, which would effectively relieve the employer of the obligation to submit such Contributions and potentially permanently deprive participants of their rights to benefits, including health insurance, pensions and vacation pay.  [Id. at ¶¶ 12 (reservation of rights), 23 (loss of benefits), 24.E (same), 24.G (same).]  Accordingly, ADMINCO requests that judgment rendered in this case expressly state that the Trust Funds retain their right to collect additional amounts later found to be due for unaudited periods.  The EMPLOYER has not been audited for any period after December 2018.  [Higa Decl. at ¶ 20.]  Thus ADMINCO's request for injunctive relief ordering the EMPLOYER to produce its records for audit is for January 2019 forward.

///

///

365687v2

# V.  CONCLUSION

ADMINCO respectfully requests that judgment be entered for monetary damages on its first claim for relief (against the EMPLOYER) and second claim for relief (jointly and severally against the EMPLOYER and PRINCIPAL), which amount is encompassed by the damages sought in the first claim for relief.  ADMINCO further requests that judgment be entered on its third and fourth claims for relief requesting injunctions ordering the EMPLOYER to comply with its obligations to produce its records for audit (third claim for relief) and submit timely monthly fringe benefit reports and contributions to the Trust Funds on behalf of its employees (fourth claim for relief).

DATED: July 25, 2019                    REICH, ADELL & CVITAN
                                        A Professional Law Corporation

                                        By: _____/s/_____
                                             PETER A. HUTCHINSON
                                             Attorneys for Plaintiff

365687v2

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 years and not a party to the within action; my business address is 3550 Wilshire Boulevard, Suite 2000 Los Angeles, California 90010-2421.

I served the foregoing document on **July 25, 2019,** described as **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT BY DEFAULT AGAINST DEFENDANTS MAX OUT INC. AND RODERICK DELTON EDISON, SR.,** on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

Max Out Inc.                                    Max Out Inc.
Roderick Delton Edison, Sr.         Roderick Delton Edison, Sr.
4257 Elton Street                            XXXX-XXX-XXXX
Baldwin Park, CA 91706             Gardena, CA XXXXX


☒    (By Mail)  As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on **July 25, 2019,** at Los Angeles, California.

☒    (Federal Court)  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Mary Helen Lopez

365687v2